Docket No. 91894–Agenda 14–March 2002.

LUANN JOHNSON, Surviving Spouse and Court-Appointed Adm’r of the Estate of William E. Johnson, Deceased, 
et al.
, v. UNITED AIRLINES 
et al.
 (Raytheon Aircraft Company,

 Appellant;  City of Quincy, Appellee).

Opinion filed January 24, 2003.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

Over the objection of Raytheon Aircraft Company (Raytheon), the circuit court of St. Clair County ruled that a settlement agreement entered into by the administrators of the estates of Johnson, Carlson, Fries, Berger, Beville, DeSalle, Hefflebower and Reed (plaintiffs herein) and the City of Quincy (Quincy) was made in good faith within the meaning of the Joint Tortfeasor Contribution Act (Contribution Act). 740 ILCS 100/0.01 
et seq
. (West 1996). That determination was affirmed by the appellate court. No. 5–98–0719 (unpublished order under Supreme Court Rule 23). Raytheon now appeals the finding of good faith before this court, arguing that the circuit court abused its discretion when it refused to allow discovery or to conduct an evidentiary hearing regarding Quincy’s relative culpability before deciding that the settlement and release were made in good faith. Raytheon also asks this court to decide whether a nonsettling tortfeasor who challenges the good faith of a settlement has the burden of proving the absence of good faith by a preponderance of the evidence or by the higher “clear and convincing” standard.

For reasons that follow, we affirm the appellate court judgment upholding the circuit court’s finding of good faith.

BACKGROUND

On November 19, 1996, United Express Flight 5925, carrying 10 passengers and a crew of two, attempted to land on runway 13 at Baldwin Field, a towerless municipal airport owned and operated by the City of Quincy in Adams County, Illinois. Runway 13 runs northwest and southeast. As United Express Flight 5925 was attempting to land, a small privately owned aircraft, Beechcraft A-90 King Air, Registration No. N1127D, piloted by Neil Reinwald and Laura Brooks Winkleman, attempted to take off at Baldwin Field on runway 4, which runs northeast and southwest. The two aircrafts collided at the intersection of the two runways, killing everyone aboard both aircrafts.

Representatives
(footnote: 1) of eight of the passengers aboard the United Express aircraft filed wrongful death and survival suits in St. Clair County, naming as defendants: United Airlines, Inc., and Great Lakes Aviation, Ltd., alleged to have operated United Express Flight 5925 as a joint enterprise; Katherine Gathje and Darin McCombs, the pilot and copilot of the United Express plane; Neil Reinwald and Laura Brooks Winkleman, the pilot and alleged copilot of the King Air aircraft; Robert Clarkson and Harvey Imber, co-owners of the King Air private aircraft; and Raytheon Aircraft Company, successor to Beech Aircraft Corporation, the manufacturer of the United Express aircraft. None of the plaintiffs filed suit against the City of Quincy.

Raytheon filed third-party contribution claims against Quincy, alleging that Quincy was subject to liability in tort for the wrongful deaths of plaintiffs’ deceaseds. The gravamen of the third-party complaints was that Quincy negligently failed to discharge its duty to business invitees to use ordinary care to provide reasonably safe ingress and egress from the airport. More specifically, Raytheon alleged that United Express Flight 5925 attempted to land at Baldwin Field using a straight-in approach, which violated standard traffic pattern procedure for towerless airports, that Quincy had been informed by the National Transportation Safety Board that commercial aircraft were landing at Baldwin Field using a straight-in approach, and that Quincy negligently failed to give appropriate or effective notice to all commercial airlines that they were required to conform their landings with standard traffic pattern procedures. Raytheon also moved to transfer venue in all of the cases to Adams County on grounds of 
forum non conveniens
.

Quincy moved for the dismissal of the third-party actions. Quincy first argued that dismissal was required because St. Clair County was not the proper venue. Suit could only be brought against Quincy in Adams County because “[a]ctions must be brought against a *** municipal *** corporation in the county in which its principal office is located or in the county in which the transaction or some part thereof occurred out of which the cause of action arose.” 735 ILCS 5/2–103 (West 1998). As an alternative argument, Quincy contended that the third-party contribution actions could not be maintained against it because it is absolutely immune from liability in tort pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1–101 
et seq
. (West 1996)).

Before the trial court ruled on Quincy’s motion to dismiss or Raytheon’s motion to transfer venue, Quincy settled with each of the eight plaintiffs for a sum of $1,000 plus costs, conditioned on the plaintiffs’ release of Quincy from all claims. Plaintiffs were also required to obtain a court ruling on the good faith of the settlement agreements and a dismissal of all third-party claims.

As required by the settlements, each plaintiff filed a motion seeking a good-faith ruling. The motions brought by plaintiffs Johnson, Carlson, and Fries were argued at a hearing before circuit court Judge Lloyd A. Cueto. The motions brought by the remaining five plaintiffs–Berger, Beville, DeSalle, Hefflebower and Reed–were argued at a hearing before circuit court Judge Michael J. O’Malley. Arguments presented at both hearings were substantially similar. Raytheon opposed the plaintiffs’ motions, arguing that the settlements were not made in good faith or, alternatively, that a good-faith ruling would be premature at this juncture. Raytheon asked both judges to allow discovery and to conduct an evidentiary hearing to develop a factual basis for deciding whether the settlements were made in good faith.

Ruling independently, both circuit court judges denied the request for discovery and an evidentiary hearing. Both judges held that, in light of all the surrounding circumstances, the settling parties had established that the settlements were made in good faith and that Raytheon had not presented any evidence to overcome the presumption of good faith. The settlements were approved and Raytheon’s third-party claims against Quincy were dismissed. The circuit court orders contained an express finding, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), that the judgment dismissing Quincy from all claims was final and appealable. Raytheon appealed and the cases were consolidated for review.

The Fifth District of our appellate court affirmed the circuit court’s good-faith ruling. The appellate court agreed that the settling parties had made a sufficient preliminary showing that the settlements had been made in good faith. The court also held that Raytheon had not met its burden of proving the absence of good faith by clear and convincing evidence. The appellate court rejected Raytheon’s argument that a good-faith finding could not be made without determining the relative liability of the settling party and, consequently, held that the circuit court did not abuse its discretion by refusing to conduct an evidentiary hearing before deciding the good faith of the settlements.

Raytheon petitioned for leave to appeal and we granted the petition. 177 Ill. 2d R. 315(a).

Raytheon raises two issues for our consideration. First, Raytheon asks this court to resolve a split among the lower courts as to the burden of proof imposed upon a nonsettling tortfeasor who challenges a settlement on the grounds that the transaction was not executed in good faith within the meaning of the Contribution Act. Raytheon contends that when challenging the good faith of a settlement, a nonsettling party has the burden of proving the absence of good faith by a preponderance of the evidence instead of the higher “clear and convincing” standard. Second, Raytheon asks this court to reverse the circuit court’s ruling that the settlement between plaintiffs and Quincy was made in good faith. Raytheon contends that the settlement constitutes bad faith because the settlement amount of $1,000 per plaintiff is grossly disproportionate to the overall damages claimed by each plaintiff. Raytheon also contends that the circuit court could not have determined whether the settlement was made in good faith within the meaning of the Contribution Act without determining Quincy’s relative culpability. Thus, Raytheon argues that the circuit court should have allowed discovery and conducted an evidentiary hearing so that a factual basis for determining Quincy’s relative culpability could have been developed before a good-faith determination was made.

ANALYSIS

The Contribution Act was enacted by our legislature in 1979 as a codification of this court’s decision in 
Skinner v. Reed-Prentice Division Package Machinery Co.
, 70 Ill. 2d 1 (1977). See 
In re Guardianship of Babb
, 162 Ill. 2d 153 (1994). The Contribution Act creates a statutory right of contribution in actions “where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death” (740 ILCS 100/1, 2(a) (West 1996)), to the extent that a tortfeasor pays more than his 
pro rata
 share of the common liability (740 ILCS 100/2(b) (West 1996)).

The Act provides in section 2(c):

“(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.” 740 ILCS 100/2(c) (West 1996).

The “good faith” of a settlement is the only limitation which the Act places on the right to settle and it is the good-faith nature of a settlement that extinguishes the contribution liability of the settling tortfeasor. 740 ILCS 100/2(d) (West 1996); 
Dubina v. Mesirow Realty Development, Inc.
, 197 Ill. 2d 185, 191 (2001)
; In re Guardianship of Babb
, 162 Ill. 2d at 161. The Act, however, does not define the term “good faith,” nor does it provide any procedural guidelines as to when or how a good-faith determination is to be made.

Burden of Proof

In the case at bar, Raytheon asks this court to resolve a conflict which has arisen with regard to the burden of proof imposed on a nonsettling tortfeasor to show that a settlement was not made in good faith within the meaning of the Contribution Act. Raytheon contends that the preponderance of the evidence standard should be imposed, rather than the stricter “clear and convincing” evidence standard. We agree.

In 
Barreto v. City of Waukegan
, 133 Ill. App. 3d 119 (1985), one of the first cases in this state to consider the issue of good faith within the context of the Contribution Act, the court, relying on 
Fisher v. Superior Court
, 103 Cal. App. 3d 434, 447, 163 Cal. Rptr. 47, 56 (1980), formulated a basic procedure for deciding the issue of good faith. Rejecting the notion that a jury or bench trial was required to determine whether a settlement was made in good faith, the 
Barreto
 court held that, when a trial court is notified that a settlement has been reached and a good-faith ruling is sought, the trial court should rule on the good faith of the settlement as soon as practicable, apart from and in advance of any trial on the tort issues. 
Barreto
, 133 Ill. App. 3d at 128. Further, the 
Barreto
 court held that the settling parties seeking discharge from contribution liability should bear the initial burden of making a preliminary showing of good faith, but that once a preliminary showing is made, the “burden of proof on the issue of good faith of the settlor shifts to the party who claims that the settlement was not made in good faith or is collusive.” 
Barreto
, 133 Ill. App. 3d at 128.

This has been the basic scheme employed by courts of this state when deciding the issue of good faith. See 
Wilson v. The Hoffman Group, Inc.
, 131 Ill. 2d 308, 318-19 (1989). However, this court has never articulated what quantum of evidence must be produced, either by the settling parties to establish a preliminary showing of good faith, or by the nonsettling challengers of the settlement to prove the absence of good faith. There are, however, a number of appellate court decisions which have spoken to these issues.

In 
Wasmund v. Metropolitan Sanitary District of Greater Chicago
, 135 Ill. App. 3d 926, 928 (1985), the court held that, because public policy strongly favors the peaceful and voluntary resolution of claims, “[w]here there is a resolution of a claim by virtue of a release or covenant, a presumption of validity is created” and the party challenging the release must carry the burden of proving invalidity by clear and convincing evidence. Subsequently, courts, citing 
Wasmund
 and its progeny, have applied these same standards when deciding the good faith of settlements. See 
Warsing v. Material Handling Services, Inc.
, 271 Ill. App. 3d 556, 560 (1995) (after a preliminary showing of good faith by the settling parties, the burden shifts to the challenging party to prove the settlement invalid by clear and convincing evidence); 
Higginbottom v. Pillsbury Co.
, 232 Ill. App. 3d 240, 249 (1992) (after a preliminary showing has been made, the party opposing the settlement must prove by clear and convincing evidence that the settlement is invalid); 
Pritchard v. SwedishAmerican Hospital
, 199 Ill. App. 3d 990, 996-97 (1990) (when settling parties represent to the court that they have reached a good-faith settlement, identify the terms and show that consideration was given, a presumption of validity arises, which must be overcome by the party challenging the settlement by clear and convincing evidence); 
Melzer v. Bausch & Lomb, Inc.
,193 Ill. App. 3d 59, 62 (1989) (once a preliminary showing of good-faith settlement has been made, the burden shifts to the party challenging the settlement to establish that it was not made in good faith by presenting clear and convincing evidence of fraud or mutual mistake); 
Ruffino v. Hinze
, 181 Ill. App. 3d 827, 829 (1989) (where a preliminary showing of good faith is made, a presumption of validity arises which must be overcome by clear and convincing evidence); 
McKanna v. Duo-Fast Corp.
, 161 Ill. App. 3d 518, 525 (1987) (assertion that an agreement is invalid must be proved by clear and convincing evidence);
 Bituminous Insurance Cos. v. Ruppenstein
, 150 Ill. App. 3d 402 (1986) (presumption of validity arises when a claim is settled by release or covenant and, thereafter, one challenging the release bears the burden of proving invalidity); 
O’Connor v. Pinto Trucking Service, Inc.
, 149 Ill. App. 3d 911, 915 (1986) (the party challenging the settlement has the burden of producing clear and convincing evidence to establish the invalidity of the settlement).

In general, for a “preliminary showing” of good faith, courts have required only that the settling parties prove the existence of a legally valid settlement agreement. In some instances, this included the obligation to prove that consideration was given and received. Proof of consideration was then held to be 
prima facie
 evidence of validity, which gave rise to a presumption that the settlement was in good faith. See 
Wreglesworth v. Arctco, Inc.
, 317 Ill. App. 3d 628, 633 (2000); 
Solimini v. Thomas
, 293 Ill. App. 3d 430, 437 (1997); 
McDermott v. Metropolitan Sanitary District
, 240 Ill. App. 3d 1, 44 (1992).

With regard to the standard of proof imposed on the nonsettling tortfeasor challenging the good faith of the settlement, “clear and convincing” evidence was generally recognized as the appropriate standard. That standard, however, was called into question in 
Bowers v. Murphy & Miller, Inc.
, 272 Ill. App. 3d 606 (1995). In 
Bowers
, the court held that, because of the competing policy considerations which must be weighed when deciding good faith within the meaning of the Contribution Act, it would be more appropriate to require nonsettling tortfeasors to prove the bad faith of a settlement by a preponderance of the evidence. Following 
Bowers
, other panels of the First District have adopted the preponderance standard. See 
Wreglesworth v. Arctco, Inc.
, 317 Ill. App. 3d at 633; 
Stickler v. American Augers, Inc.
, 303 Ill. App. 3d 689 (1999);
 Evans v. Tabernacle No. 1 God’s Church of Holiness in Christ
, 283 Ill. App. 3d 101, 107 (1996) (the burden of proof rests on the nonsettling tortfeasor to establish a lack of good faith by a preponderance of the evidence).

Having reviewed the relevant case law, we conclude that, when a court determines whether a settlement was negotiated in good faith within the meaning of the Contribution Act, the settling parties carry the initial burden of making a preliminary showing of good faith. At a minimum, the settling parties must show the existence of a legally valid settlement agreement. However, not all legally valid settlements satisfy the good-faith requirements of the Contribution Act. See
 Stickler v. American Augers, Inc.
, 325 Ill. App. 3d 506, 511 (2001); 
Stickler v. American Augers, Inc.
, 303 Ill. App. 3d 689, 693 (1999); 
Bowers
, 272 Ill. App. 3d at 610-11. Therefore, other factual evidence may be necessary before the court may determine, as an initial matter, whether the settlement is fair and reasonable in light of the policies underlying the Contribution Act.

Further, we are persuaded by the well-reasoned decision in 
Bowers
 that, once a preliminary showing of good faith has been made by the settling parties, the party challenging the good faith of the settlement need prove the absence of good faith by a preponderance of the evidence. The “clear and convincing” standard, when traced back to its genesis in 
Wasmund
, rests on a body of law where the burden was on a party to a settlement attempting to set aside the settlement upon a claim of fraud, misrepresentation, or mistake of fact. See 
McComb v. Seestadt
, 93 Ill. App. 3d 705 (1981); 
Martin v. Po-Jo, Inc.
, 104 Ill. App. 2d 462 (1969). The 
Bowers
 court concluded:

“When we address setting aside a release on the application of a party to the agreement, we take into consideration the rights of the contracting parties tempered by a public policy favoring settlement. Nonsettling defendants in a contribution setting are not parties to the settlements entered into between a plaintiff and a settling tortfeasor, yet they have rights that are affected by those settlements. The Contribution Act promotes not only the policy favoring settlement, it also promotes the policy favoring the equitable apportionment of damages among tortfeasors. [Citation.] The policy favoring settlement is more than accommodated by shifting the burden of proof to a nonsettling defendant to establish that a settlement is not in good faith once a preliminary showing of good faith has been made. By not only shifting the burden of proof to a nonsettling defendant, but also elevating that burden to proof by clear and convincing evidence, a distinct priority is given to the policy favoring settlement over the policy favoring the equitable apportionment of damages. Both policies are important [citation], and we fail to see any reason why one should be favored over the other. In our opinion, shifting the burden of proof to a nonsettling defendant to establish a lack of good faith and fixing that burden at the traditional preponderance of the evidence standard protects both policies promoted by the Contribution Act while favoring neither.” 
Bowers
, 272 Ill. App. 3d at 610.

This court has previously recognized that the Contribution Act seeks to promote two important public policies–the encouragement of settlements and the equitable apportionment of damages among tortfeasors. See 
Dubina v. Mesirow Realty Development, Inc
., 197 Ill. 2d at 193-94; 
In re Guardianship of Babb
, 162 Ill. 2d at 171. When a court decides whether a settlement was negotiated in “good faith,” it must strike a balance between these two policy considerations. We agree with 
Bowers
 that the balance of these two policies is best struck by placing the burden of proving the absence of good faith on the party challenging the settlement, but by sustaining the challenge to the settlement when a preponderance of the evidence indicates a lack of good faith.

In the case at bar, the appellate court held that the proper standard to be imposed on a party attempting to overcome a preliminary showing of good faith was proof by clear and convincing evidence. Nevertheless, the appellate court ruled that Raytheon had produced 
no
 evidence of bad faith and, for that reason, upheld the trial court’s finding of good faith. The trial court
(footnote: 2) also ruled that, regardless of the burden imposed, Raytheon had not supported its claim with any evidence. Consequently, it is not necessary that we remand this cause to the trial court or the appellate court for further consideration under the preponderance standard announced today. Instead, we shall review the finding that the settlements reached by the plaintiffs and Quincy were made in good faith.

Good Faith

As noted earlier, “good faith” is not defined by the Contribution Act. Nor can there be a single, precise formula for determining what constitutes “good faith” within the meaning of the Contribution Act that would be applicable in every case. A settlement will not be found to be in good faith if it is shown that the settling parties engaged in wrongful conduct, collusion, or fraud. 
In re Guardianship of Babb
, 162 Ill. 2d at 161;
 Lowe v. Norfolk & Western Ry. Co.
 124 Ill. App. 3d 80, 94 (1984). Nor will a settlement agreement satisfy the good-faith requirement if it conflicts with the terms of the Act or is inconsistent with the policies underlying the Act. 
Dubina v. Mesirow Realty Development, Inc.
, 197 Ill. 2d at 192 (assignment of plaintiffs’ claims against nonsettling tortfeasors to settling tortfeasors was contrary to the terms of and policies underlying the Act); 
In re Guardianship of Babb
, 162 Ill. 2d 153 (1994) (settlement containing loan-receipt provision conflicted with the terms of the Act and did not promote settlements or the equitable apportionment of damages). Ultimately, however, whether a settlement satisfies the good-faith requirement as contemplated by the Contribution Act is a matter left to the discretion of the trial court based upon the court’s consideration of the totality of the circumstances. 
Dubina v. Mesirow Realty Development, Inc.
, 197 Ill. 2d at 191-92
; In re Guardianship of Babb
, 162 Ill. 2d at 162. A good-faith determination is reviewed on appeal for an abuse of discretion. 
Dubina v. Mesirow Realty Development, Inc.
, 197 Ill. 2d at 192; 
In re Guardianship of Babb
, 162 Ill. 2d at 162.

In the case at bar, the trial court, ruling on the good faith of the settlement between plaintiffs and Quincy, first required the settling parties to make a preliminary showing of good faith. Quincy represented to the court that, although it believed itself to be immune from all tort liability, it agreed to settle with plaintiffs for the nominal amount of $1,000 per plaintiff so that it could avoid the time and expense of additional litigation. Plaintiffs’ counsel then advised the trial court that, after extensive research, it had determined that the likelihood of success in a tort suit against Quincy was marginal. Therefore, plaintiffs decided that the limited amount of litigation dollars were better spent pursuing other sources. The settlement money from Quincy would be used for the on-going litigation.

The trial court found that the representations made by the settling parties were a sufficient preliminary showing of good faith and shifted the burden to Raytheon to show that the settlements were made in bad faith. The court then found that Raytheon failed to show any evidence of bad faith and ruled that, based on the totality of the circumstances, the settlement was made in good faith.

Raytheon now contends that the trial court abused its discretion when it decided that the settlements between Quincy and the plaintiffs were made in good faith without first conducting an evidentiary hearing to determine Quincy’s relative culpability. Raytheon contends that where, as here, the amount tendered in settlement is nominal and there is a gross disparity between the settlement amount and the 
ad damnum
 in the complaints, the nonsettling party should be given an opportunity to show that the settlement amount bears no reasonable relationship to the settling party’s relative culpability. We disagree.

At the outset we find Raytheon’s premise to be faulty. The fact that the trial court did not conduct an evidentiary hearing, as Raytheon requested, does not mean that the trial court did not consider whether the settlement amount bore a reasonable relationship to the settling party’s relative culpability. At the hearing on plaintiffs’ motion for a good-faith finding, the trial court had before it the pleadings, memoranda and other filings in the case. The trial court also heard extensive argument by counsel and, after hearing argument, took the matter under advisement and invited the parties to submit any additional materials in support of their positions. There is no reason to believe that the trial court was unable to determine, from the facts before it, the parties’ relative culpability. The trial court is in the best position to decide what type of hearing is necessary to fully adjudicate the issue of good faith. See
 Barreto v. City of Waukegan
, 133 Ill. App. 3d 119.

We are also unpersuaded that the amount of the settlement here is an indication of bad faith. It is true that plaintiffs’ complaints sought damages in the millions of dollars and that the settlements with Quincy were for the nominal figure of $1,000 per plaintiff. However, the disparity between the settlement amount and the 
ad damnum
 in the complaint is not an accurate measure of the good faith of a settlement. See 
Pritchard v. SwedishAmerican Hospital
, 199 Ill. App. 3d at 998. Nor does the small amount of the settlement, alone, require a finding of bad faith. See 
Pritchard v. SwedishAmerican Hospital
, 199 Ill. App. 3d at 998. The amount of a settlement must be viewed in relation to the probability of recovery, the defenses raised, and the settling party’s potential legal liability. See 
Smith v. Texaco, Inc.
, 232 Ill. App. 3d 463 (1992); 
O’Connor v. Pinto Trucking Service, Inc.
, 149 Ill. App. 3d 911, 916 (1986).

In the case at bar, Quincy claimed absolute immunity from all tort liability by operation of the Tort Immunity Act. Quincy had previously asserted this immunity defense in response to Raytheon’s third-party contribution claims and both Quincy and Raytheon had submitted memoranda to the court on the issue. Raytheon does not deny that, if Quincy were immune from direct tort liability, the third-party contribution claims would be barred. See 
Board of Trustees of Community College, District No. 508 v. Coopers & Lybrand LLP
, 296 Ill. App. 3d 538 (1998) (public policy considerations supporting public officials’ immunity requires that the immunity be applied to bar contribution actions as well as direct actions);
 Buell v. Oakland Fire Protection District Board
, 237 Ill. App. 3d 940 (1992); 
Martin v. Lion Uniform Co.
, 180 Ill. App. 3d 955 (1989); 
Lietsch v. Allen
, 173 Ill. App. 3d 516 (1988). If Quincy was immune, it could not be culpable for any damages sought by plaintiffs.

At the time that plaintiffs settled with Quincy, plaintiffs recognized that Quincy had a viable defense against tort claims. In fact, plaintiffs never sued Quincy directly and plaintiffs’ counsel represented to the trial court that the decision not to sue Quincy was formed after extensive research on the matter indicated that a suit against Quincy had little likelihood of success. Thus, here, unlike the situation in 
Warsing v. Material Handling Services, Inc.
, 271 Ill. App. 3d 556, 561 (1995), there is no evidence that plaintiffs’ settlement with Quincy was motivated by a desire to impede a legitimate claim for contribution. Raytheon has offered nothing to show that the settlement between Quincy and plaintiffs was anything but an arms’ length agreement. We conclude, then, that the nominal amount of the settlement, viewed in light of the circumstances surrounding this case, is not an indication that the settlement was made in bad faith.

Raytheon’s main argument against the finding of good faith is that Quincy’s immunity defense is not a viable one. Raytheon contends that the trial court should not have ruled on the good faith of the settlement without conducting an evidentiary hearing to “ascertain the validity” of Raytheon’s third-party claims and decide “whether the $1000 bore any reasonable relationship to Quincy’s relative culpability for the accident.” Raytheon also argues that Quincy’s continued presence in the lawsuit would have increased the likelihood that the entire matter would be transferred out of St. Clair County, which is plaintiffs’ chosen forum. Thus, Raytheon suggests that plaintiffs’ decision to settle with Quincy was motivated by the desire to prevent a change of venue.

Even if plaintiffs’ decision to settle with Quincy was influenced by matters of venue, we are not persuaded that that constitutes evidence of bad faith. The fact that a settlement is advantageous to a party is not necessarily an indication of bad faith. See 
O’Connor v. Pinto Trucking Service, Inc.
, 149 Ill. App. 3d at 916. Although plaintiffs’ settlement with Quincy may have improved plaintiffs’ chances of success in defeating Raytheon’s 
forum non conveniens
 motion and, thereby, would have allowed plaintiffs to remain in the forum of their choice, this falls short of being evidence of collusion or wrongdoing. Furthermore, the trial court was aware of the venue issue and its possible influence on plaintiffs’ decision to settle. It was one factor in the totality of the circumstances which the trial court considered when deciding whether the settlement was made in good faith. Emphasis should not be placed on any single factor. 
In re Guardianship of Babb
, 162 Ill. 2d at 162; 
Ballweg v. City of Springfield
, 114 Ill. 2d 107 (1986).

We also find no merit to Raytheon’s claim that a good-faith determination could not be made unless there was an evidentiary hearing to determine the validity of the third-party complaints and Quincy’s relative culpability. Raytheon denies in its brief that it is asking for a trial on the merits. It claims that it “seeks only discovery and an evidentiary hearing sufficient to determine whether there is a viable theory of recovery against Quincy.” However, in the context of this case, a determination that there is “a viable theory of recovery” can only be interpreted as a ruling on the merits of Quincy’s immunity defense. Courts have repeatedly and consistently held that a separate evidentiary hearing is not required and that a trial court need not decide the merits of the tort case or rule on the relative liabilities of the parties before making a good-faith determination. See 
Smith v. Texaco, Inc.
, 232 Ill. App. 3d at 471; 
Ruffino v. Hinze
, 181 Ill. App. 3d at 832; 
Barreto v. City of Waukegan
, 133 Ill. App. 3d at 128. A court is capable of ruling on “good faith” without a precise determination of the overall damages suffered by the plaintiff and the settling tortfeasor’s proportionate liability. See 
McDermott v. Metropolitan Sanitary District
, 240 Ill. App. 3d 1, 46 (1992) (courts have repeatedly rejected the “proportionality” or “reasonable range” test for determining the good faith of a settlement); 
Pritchard v. SwedishAmerican Hospital
, 199 Ill. App. 3d at 998 (doctor’s settlement contribution of $10,000 in a medical malpractice suit where plaintiff sought several millions of dollars in damages was reasonable because plaintiff might not be able to prove proximate cause).

We see no purpose for an evidentiary hearing. When the trial court made its good-faith ruling, the record contained Raytheon’s response to Quincy’s motion for dismissal of the third-party claims. Raytheon disputed Quincy’s claim of immunity, both in its legal filings and in its argument at the good-faith hearing. Raytheon was given the opportunity to supplement the record and present additional argument even after the good-faith hearing was held. Raytheon has made no offer of proof, nor has Raytheon even suggested what additional evidence concerning the issue of Quincy’s immunity might be revealed by an evidentiary hearing. The trial court did not abuse its discretion by denying Raytheon’s request for an evidentiary hearing.

CONCLUSION

We agree with the trial court that the settling parties provided a sufficient preliminary showing of good faith, which Raytheon failed to overcome. Applying the totality of the circumstances test to the facts of this case, we find that the trial court did not abuse its discretion when it found the settlement between plaintiffs and Quincy satisfied the good-faith requirement of the Contribution Act. For these reasons, we affirm the judgment of the appellate court upholding the good-faith ruling made by the trial court.

Affirmed.

JUSTICE RARICK took no part in the consideration or decision of this case.

FOOTNOTES
1:     
1
Although representatives of all 10 United Express passengers and the estate of copilot McCombs filed wrongful death and survival actions, the representatives of eight United Express passengers are the named plaintiffs in this appeal.

2:     
2
As noted above, two judges in the circuit court, after receiving the same evidence and hearing substantially similar arguments, ruled that the settlements were made in good faith and denied Raytheon’s request for an evidentiary hearing. References to “the trial court” encompass the rulings of both judges.