SECOND DIVISION
JULY 20, 2010

1-09-2163

| | |
|---|---|
| ELLIOTT CELLINI, BRANDON FORSHALL, JERRY FORSHALL, and EDWARD DIAMOND, Individually and as Special Administrator of the Estate of Corey Diamond, Deceased,<br><br>　　　　　　Plaintiffs,[1]<br><br>　　　v.<br><br>THE VILLAGE OF GURNEE, a Municipal Corporation; THE VILLAGE OF LINCOLNSHIRE, a Municipal Corporation; THE VILLAGE OF BUFFALO GROVE, a Municipal Corporation; THE VILLAGE OF WHEELING, a Municipal Corporation; RALPH LEWIS, Individually; U-HAUL COMPANY OF ILLINOIS, Incorporated, an Illinois Corporation; U-HAUL COMPANY OF ARIZONA, an Arizona Corporation; U-HAUL INTERNATIONAL, Incorporated, an Arizona Corporation; AMERCO, a Nevada Corporation; AMERCO REAL ESTATE COMPANY, a Nevada Corporation,<br>　　　　　　Defendants<br><br>(U-Haul Company of Illinois, Incorporated, an Illinois Corporation; U-Haul Company of Arizona, an Arizona corporation; U-Haul International, Incorporated, an Arizona Corporation; Amerco, a Nevada Corporation; Amerco Real Estate Company, a Nevada Corporation,<br>　　　　　Counterplaintiffs-Appellants;<br><br>　　　v.<br>The Village of Buffalo Grove, a Municipal Corporation,<br>　　　　　Counterdefendant-Appellee;<br><br>The Village of Gurnee, a Municipal Corporation; The Village of Lincolshire, a Municipal Corporation; The Village of Wheeling, a Municipal Corporation; Ralph Lewis, Individually,<br>　　　　　Counterdefendants). | Appeal from the Circuit Court of Cook County.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Nos.　06 L 8480<br>　　　06 L 8504<br>　　　06 L 8506<br>　　　Consolidated<br>　　　Discovery.<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Honorable<br>Diane J. Larsen,<br>Judge Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the opinion of the court:

---

[1]Elliott Cellini; Brandon and Jerry Forshall (the Forshalls); and Edward Diamond each filed a separate lawsuit against the same 10 defendants. The three lawsuits (Nos. 06 L 8480, 06 L 8504 and 06 L 8506) were consolidated for discovery.

1-09-2163

This appeal arises from the July 23, 2009 order of the circuit court of Cook County, which granted a motion for a good-faith finding that a settlement agreement entered into between one of the plaintiffs, Elliott Cellini (Cellini), and one of the defendants, Village of Buffalo Grove (Buffalo Grove), was "made and entered into in good-faith within the meaning of the [Joint Tortfeasor] Contribution Act."[2] 740 ILCS 100/1 *et seq.* (West 2006). The July 23, 2009 order also dismissed all claims against Buffalo Grove, including a "counterclaim for contribution" filed by the defendants U-Haul Company of Illinois, Inc., U-Haul Company of Arizona, U-Haul International, Inc., Amerco, and Amerco Real Estate Company (collectively, the U-Haul entities). On appeal, the U-Haul entities' sole argument is that the circuit court abused its discretion in granting Buffalo Grove's motion for a good-faith finding and in dismissing all claims against Buffalo Grove without holding an evidentiary hearing. For the following reasons, we affirm the judgment of the circuit court of Cook County.

BACKGROUND

On July 22, 2006, Ralph Lewis (Lewis) rented a truck from a U-Haul truck rental center in Markham, Illinois, by producing a fraudulent driver's license which identified him as "Taylor Thode." On July 23, 2006, Lewis, along with his friend, Cordello Webb (Webb), drove the U-Haul truck to the Village of Gurnee (Gurnee). While in Gurnee, Lewis and Webb visited a shopping center and met Daysha Freeman (Freeman), who was employed at a cellular telephone kiosk.

_____

[2]In the July 23, 2009 order, the circuit court also found that Buffalo Grove's settlement agreements with the Forshalls and Edward Diamond (Diamond) were also entered into in good-faith. However, this appeal pertains only to the settlement agreement entered into between Cellini and Buffalo Grove.

According to Freeman's discovery deposition testimony, on July 23, 2006, she was selling cellular telephones and contract subscriptions at the shopping center in Gurnee when she was approached by Lewis and Webb. Lewis, posing as "Taylor Thode," produced the same fraudulent driver's license and a social security number to Freeman, who then "ran his credit" and approved Lewis for the purchase of "five phones, zero deposit." Lewis then suggested that he would be willing to purchase the five telephones in exchange for a date with Freeman, to which Freeman agreed. Later that evening, at approximately 7 p.m., Lewis and Webb returned to the shopping center to pick up Freeman in the U-Haul truck, which was driven by Lewis.

After Freeman, Lewis and Webb left the shopping mall, Lewis drove to a nearby Home Depot store to purportedly "drop off" a refrigerator from his U-Haul truck. While Lewis and Webb were at the Home Depot store, Freeman, who still believed that she and Lewis would go on a dinner date after Lewis' detour to the Home Depot store, visited another nearby retailer before returning to Lewis' U-Haul truck in the Home Depot parking lot. Several minutes after Freeman waited by the U-Haul truck, Lewis and Webb reemerged from the Home Depot store. Subsequently, Lewis, Webb and Freeman reentered the U-Haul truck. Lewis then informed Freeman that there was "a change of plans" and that he needed to "drop this U-Haul [truck] off." Lewis then drove to a nearby highway and headed southbound toward Chicago.

On that same night, July 23, 2006, Officer Matthew Bendler (Officer Bendler) and Officer Dion Snyder (Officer Snyder), both police officers for the Gurnee police department, received a police dispatch call stating that employees at a Home Depot noticed "two suspicious subjects that were trying to *** buy high-priced items with a fake credit card or fake account," but that the

3

suspects "had not actually taken anything." The two suspects, one of whom was later identified as Lewis, had then left the store and were traveling eastbound in a U-Haul truck. Subsequently, Officer Bendler located the suspects' U-Haul truck on Interstate 94 and followed closely behind it in his police vehicle. Officer Snyder, while driving a separate police vehicle, followed behind Officer Bendler. Both Officers Bendler and Snyder activated their police emergency sirens and attempted to "effectuate a traffic stop" of the U-Haul truck. However, the U-Haul truck failed to stop and, instead, changed lanes and drove onto the shoulder of the highway for approximately "five [to] six blocks" at an accelerated speed of 55 miles per hour while Officers Bendler and Snyder followed closely behind. Once Officers Bendler and Snyder realized that the U-Haul truck would not stop, they deactivated their police vehicle sirens, decelerated, and disengaged from the traffic stop because no "forcible felony" had been committed, no life was being endangered, and the Gurnee police department had not authorized a police pursuit of this vehicle.

Subsequently, the Gurnee police department dispatched information through the Illinois State Police Emergency Radio Network (ISPERN), a radio communications system designed to relay crime-related information to surrounding jurisdictions. The dispatched information noted that Lewis was driving recklessly through other municipalities.

Lewis then drove the U-Haul truck through the Village of Lincolnshire (Lincolnshire). At approximately 8 p.m., Officer Brian Balinski (Officer Balinski) of the Lincolnshire police department was on patrol in his police vehicle when he learned via ISPERN that "[a] vehicle was wanted by the Gurnee [p]olice [d]epartment for fleeing and eluding and theft," and that the suspects' vehicle was a "U-Haul box truck with Arizona license plates." Subsequently, Officer Balinski

spotted Lewis' U-Haul truck near the intersection of Routes 21 and 22 in Lincolnshire. According to Officer Balinski's discovery deposition testimony, Lewis accelerated the U-Haul truck once he saw Officer Balinski's police vehicle. Officer Balinski then activated the emergency lights of his police vehicle and "sped up to approximately 80 miles per hour" in order to begin pursuing the suspects. At that time, Officer Andrew Markoya (Officer Markoya), another Lincolnshire police officer, joined in the pursuit in a separate police vehicle. The emergency lights in Officer Markoya's police vehicle were also activated. As Officers Balinski and Markoya continued the police car chase by traveling southbound on Route 21, Lewis drove the U-Haul truck into the center median of Route 21 and ran through several red lights at various intersections. Officer Balinkski observed that as the police car chase progressed, Lewis increased his driving speed and his driving became more erratic and reckless. Lewis then exited onto Lake Cook Road and began traveling westbound. Officers Balinski and Markoya continued to follow him closely. Subsequently, Officer Markoya "vocally terminated the [police car] chase over ISPERN" near the intersection of Lake Cook Road and Lexington Road, and both officers stopped pursuing the U-Haul truck. According to Officer Balinksi's deposition testimony, he agreed with Officer Markoya's decision to terminate the police car chase because "[o]ur attempt to stop the vehicle at that point was unreasonable. There was traffic on the road at that point. The vehicle was – it just became too dangerous." He testified that the entirety of the police car chase by he and Officer Markoya lasted approximately "four to five minutes" for a distance of approximately "three to four miles."

During the police pursuits, Freeman made several emergency telephone calls from inside the U-Haul truck to alert the police of the whereabouts of the U-Haul truck. She informed the police that

"[t]hey wouldn't let [her] out of the car." According to Freeman's deposition testimony, "as the police were chasing [Lewis] faster and faster, [Lewis] was going faster and faster and violating more rules of the road."

Following Officers Balinski's and Markoya's termination of their pursuit of the U-Haul truck, Lewis drove through Buffalo Grove. Susbsequently, Corporal Tara Romanow (Corporal Romanow) and Officer Keith Bourbonnais (Officer Bourbonnais) of the Buffalo Grove police department observed the U-Haul truck traveling at "an extremely high rate of speed" of over 60 miles per hour toward their police vehicles near the intersection of Vintage Lane and Old Checker Road in Buffalo Grove. Corporal Romanow and Officer Bourbonnais maneuvered their police vehicles out of the direct path of the speeding U-Haul truck, after which they activated the emergency lights and sirens of their police vehicles and began pursuing Lewis. Once they began pursuit of the U-Haul truck, Corporal Romanow noticed that Lewis accelerated to a speed of over 60 miles per hour and ran a red light at the intersection of Buffalo Grove and Lake Cook Roads.

According to Freeman's deposition testimony, the U-Haul truck, while being pursued by Corporal Romanow and Officer Bourbonnais, continued to travel through several red lights at approximately 70 to 75 miles per hour before colliding with a white car driven by Cellini at the intersection of Schoenbeck and Dundee Roads in the Village of Wheeling (Wheeling). The collision injured Cellini and one of his passengers, Brandon Forshall, and killed Corey Diamond, a second passenger in Cellini's vehicle.

Lewis was arrested, charged and convicted in a criminal proceeding of first-degree murder; unlawful possession of a stolen vehicle, aggravated battery, and unlawful restraint. He was

sentenced to 45 years of imprisonment. People v. Lewis, No. 06 CR 1916001 (Cir. Ct. Cook Co.).

On August 10, 2006, Allyson Cellini, on behalf of her minor son, Cellini, filed a lawsuit against Lewis alleging that Cellini sustained injuries as a result of Lewis' negligent driving. On that same day, August 10, 2006, Jerry Forshall, on behalf of his minor son, Brandon Forshall, filed a complaint against Buffalo Grove alleging willful and wanton conduct by the municipality. A third lawsuit was also filed by Diamond, individually and as special administrator of the estate of Corey Diamond, against Buffalo Grove for willful and wanton conduct.

On August 24, 2006, Jerry Forshall filed a motion to consolidate the three separate lawsuits, which the circuit court granted for the purpose of discovery.

On July 20, 2007, Allyson Cellini, on behalf of her minor son, Cellini, filed a first amended complaint naming Buffalo Grove, Gurnee, Lincolnshire and Wheeling as additional defendants to the lawsuit. On that same day, July 20, 2007, Jerry Forshall, on behalf of his minor son, Brandon Forshall, also filed a first amended complaint, naming Gurnee, Lincolnshire, Wheeling and Lewis as additional defendants to his lawsuit. Diamond, individually and as special administrator of the estate of Corey Diamond, also filed a first amended complaint in which he named Gurnee, Lincolnshire, Wheeling and Lewis as additional defendants to his lawsuit.

On July 14, 2008, Cellini[3] filed a second amended complaint, which named the U-Haul

---

[3]Although Cellini was a minor at the time of the July 23, 2006 accident, he had reached the age of majority by the time of the filing of the second amended complaint.

entities as additional party defendants in his lawsuit. On that same day, July 14, 2008, Brandon[4] and Jerry Forshall (the Forshalls) filed a second amendment of their complaint, which, similar to Cellini's second amended complaint, named the U-Haul entities as additional defendants. Likewise, Diamond, individually and as special administrator of the estate of Corey Diamond, filed a second amended complaint which named the U-Haul entities as additional defendants in that lawsuit.

On April 13, 2009, Cellini filed a third amended complaint against Lewis, Buffalo Grove, Gurnee, Lincolnshire, Wheeling, and the U-Haul entities.[5] On April 14, 2009, the Forshalls and Diamond each filed a separate third amended complaint against the same defendants as those named in Cellini's third amended complaint. The third amended complaints were substantially similar to the second amended complaints, except that the third amended complaints alleged negligence against Wheeling (count V), rather than alleged that Wheeling committed "willful and wanton" acts or omissions as stated in the second amended complaints.

On May 13, 2009, the U-Haul entities filed "counterclaims for contribution" against Lewis,

---

[4]Although Brandon Forshall was a minor at the time of the July 23, 2006 accident, he had reached the age of majority by the time of the filing of the second amended complaint.

[5]Count I alleged that Lewis' willful and wanton conduct and omissions caused injury to Cellini. Count II alleged that Buffalo Grove's willful and wanton acts and omissions caused injury to Cellini. Count III alleged that Gurnee's willful and wanton acts and omissions caused injury to Cellini. Count IV alleged that Lincolnshire's willful and wanton acts and omissions caused injury to Cellini. Count V alleged negligence against Wheeling for failing to maintain an "emergency vehicle preemption system (EVPS)" so as to allow traffic lights to remain green for emergency vehicles and to remain red for other intersecting traffic. Counts VI and VIII alleged liability against all defendants under the Family Expense Act. Count VII alleged negligence against the U-Haul entities in renting a truck to Lewis.

Buffalo Grove,[6] Gurnee,[7] Lincolnshire and Wheeling[8] in each of the three lawsuits brought by Cellini, the Forshalls and Diamond.

On May 29, 2009, Lincolnshire filed a motion for a good-faith finding, which sought approval for the following settlement terms with the plaintiffs Cellini, the Forshalls and Diamond: $100,000 to Cellini; $10,000 to the Forshalls; and $40,000 to the estate of Corey Diamond. Lincolnshire's motion for a good-faith finding was filed without written opposition from the other defendants, which the circuit court subsequently granted and found that "any liability and contribution owed" by Lincolnshire were extinguished.

On June 9, 2009, Buffalo Grove filed a motion for a good-faith finding, which sought approval for the following settlement terms with the plaintiffs Cellini, the Forshalls and Diamond: $1 million to Cellini; $50,000 to the Forshalls; and $500,000 to the estate of Corey Diamond. Buffalo Grove denied any liability regarding the events surrounding the July 23, 2006 accident, but alleged that the settlement agreement was entered into "in good[-]faith within the meaning of the [Joint Tortfeasor} Contribution Act." 740 ILCS 100/2(c) (West 2006).

---

[6]Buffalo Grove also filed a "counterclaim for contribution" against each of the other defendants (Gurnee, Lincolnshire, Wheeling, Lewis, and the U-Haul entities) in each of the three lawsuits filed by the plaintiffs Cellini, the Forshalls and Diamond.

[7]Gurnee also filed a "counterclaim for contribution" against each of the other defendants (Lincolnshire, Buffalo Grove, Wheeling, Lewis, and the U-Haul entities) in each of the three lawsuits filed by the plaintiffs Cellini, the Forshalls and Diamond.

[8]Wheeling also filed a "counterclaim for contribution" against each of the other defendants (Gurnee, Lincolnshire, Buffalo Grove, Lewis, and the U-Haul entities) in each of the three lawsuits filed by the plaintiffs Cellini, the Forshalls, and Diamond.

On June 23, 2009, Wheeling filed a motion to dismiss counts V and VI of the third amended complaints filed by Cellini, the Forshalls and Diamond, by asserting various tort immunity defenses.

On June 24, 2009, Wheeling filed a motion to dismiss count V of the U-Haul entities' counterclaim for contribution against Wheeling.

On July 6, 2009, the U-Haul entities filed a response in opposition of Buffalo Grove's motion for a good-faith finding, arguing that the settlement terms were not entered into in good faith because "both Lewis' reckless driving and the decision of the Buffalo Grove police officers to chase Lewis at high speeds through residential neighborhoods" were the direct cause of Cellini's and Brandon Forshall's injuries, and a direct cause of injuries resulting in the death of Corey Diamond. Further, the U-Haul entities argued that Buffalo Grove's combined settlement of $1,550,000 with Cellini, the Forshalls and Diamond was disproportionately low compared to the damages in excess of $10 million that would likely be sought at trial against the U-Haul entities, as the nonsettling defendants. The U-Haul entities argued that the "courts should examine all settlements with utmost scrutiny" and requested that the circuit court deny Buffalo Grove's motion for a good-faith finding.

On July 23, 2009, a hearing was held before the circuit court on Buffalo Grove's motion for a good-faith finding. At the hearing, the U-Haul entities requested that the circuit court deny Buffalo Grove's motion for a good-faith finding and to "let discovery go forward as to the nature of [Cellini's] recovery from his brain injury, discovery as to the actual involvement of Buffalo Grove and then at some point have an evidentiary hearing as to see *** whether the circumstances justify [a good-faith finding]." Likewise, at the hearing, Wheeling opposed Buffalo Grove's motion for a good-faith finding by arguing that Wheeling, as a nonsettling defendant, could be held liable at trial

for a disproportionate amount of fault if Buffalo Grove's settlement with Cellini, the Forshalls and Diamond were approved.

Subsequently, on that same day, July 23, 2009, after a hearing on the motion, the circuit court granted Buffalo Grove's motion for a good-faith finding that the settlement agreement entered into between Buffalo Grove and the three plaintiffs–Cellini, the Forshalls and Diamond–was made in good-faith within the meaning of the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 2006)). The circuit court also dismissed with prejudice all counterclaims for contribution against Buffalo Grove, including the May 13, 2009 counterclaims for contribution filed by the U-Haul entities against Buffalo Grove in each of the three lawsuits brought by Cellini, the Forshalls and Diamond. The circuit court said:

> "[O]ver [the U-Haul entities'] objections and over Wheeling's
> objections, really there's simply no basis in the record for anything
> other than a good faith finding at this point.
>
> And I understand the conundrum facing the defendants as a
> former defense counsel. And you're preaching to the choir here in
> many other circumstances anyway, but this has to wait another day.
>
> The motion [for a good-faith finding] is granted."

The circuit court further dismissed with prejudice "all counterclaims and [t]hird-[p]arty [c]omplaints currently pending against [Buffalo Grove]" and found, pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), that "there exists no just reason to delay enforcement or appeal of the [July 23, 2009] order."

11

On August 14, 2009, the U-Haul entities filed a notice of appeal before this court.[9]

ANALYSIS

As an initial matter, the U-Haul entities assert in their brief before this court that they are appealing only "the portion of the July 23, 2009 [o]rder granting the [m]otion for [g]ood [f]aith [f]inding as to the complaint filed by [p]laintiff Elliott Cellini," and are "not appealing the dismissal of claims against Buffalo Grove brought by the [Forshalls] and Diamond *** because the [U-Haul entities] have settled those claims." Thus, the sole issue before this court on appeal is whether the circuit court abused its discretion in granting Buffalo Grove's motion for a good-faith finding, as it relates to the $1 milllion settlement agreement entered into between Buffalo Grove and Cellini, and in dismissing all claims against Buffalo Grove without holding an evidentiary hearing.

We review the circuit court's decision under an abuse of discretion standard. Johnson v. United Airlines, 203 Ill. 2d 121, 135, 784 N.E.2d 812, 821-22 (2003); Dubina v. Mesirow Realty Development, Inc., 197 Ill. 2d 185, 192, 756 N.E.2d 836, 840 (2001). "An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." Favia v. Ford Motor Co., 381 Ill. App. 3d 809, 815, 886 N.E.2d 1182, 1187

---

[9]On August 21, 2009, Wheeling also filed a notice of appeal before this court, appealing from the circuit court's July 23, 2009 order granting Buffalo Grove's motion for a good-faith finding (No. 1-09-2206). In March 2010, Wheeling's appeal was dismissed for want of prosecution when Wheeling failed to file the record on appeal within the time prescribed by Supreme Court Rule 326.

It is represented in a brief before this court that Cellini has now settled with all defendants except Lewis and the U-Haul entities, and that the Forshalls and Diamond have settled with all defendants except Lewis. However, the instant appeal pertains only to the settlement agreement entered into between Cellini and Buffalo Grove, which is the subject of the circuit court's July 23, 2009 order.

(2008).

The U-Haul entities argue that the settlement agreement entered into between Buffalo Grove and Cellini was not made in good-faith and violated public policy as established by the Joint Tortfeasor Contribution Act by shifting an inequitable portion of damages onto the U-Haul entities, as nonsettling defendants. Specifically, they contend that Buffalo Grove's degree of liability far exceeded any of the U-Haul entities' alleged fault, and thus, allowing Buffalo Grove, as a "primary wrongdoer," to settle with Cellini for $1 million "when it was a primary and direct cause of Cellini's injuries would shift a disproportionate percentage of the liability onto the U-Haul [entities]" at trial. Further, the U-Haul entities argue that the dismissal of their counterclaim for contribution against Buffalo Grove deprived them of "the ability to recover from Buffalo Grove in an amount commensurate with Buffalo Grove's fault." Thus, the U-Haul entities argue that a "heightened level of scrutiny" should be used to scrutinize the reasonableness of the settlement agreement, and an evidentiary hearing should have been held "to evaluate the potential damages and the relative fault of all parties." Therefore, they request this court to reverse the circuit court's July 23, 2009 order granting Buffalo Grove's motion for a good-faith finding.

Buffalo Grove argues to the contrary that its settlement agreement with Cellini was made in good-faith and that it did not violate the public policy of the Joint Tortfeasor Contribution Act, which ensures an equitable apportionment of damages among tortfeasors. Buffalo Grove contends that it paid $1 million "in the settlement of a doubtful and disputed claim for which [it] had numerous defenses," and that the U-Haul entities "[have] a right to a set-off of *** the amount of the settlement." Buffalo Grove asserts that to adopt the U-Haul entities' "suggestion that the court

must make a determination [of who is responsible and the total amount of damages], in a case in which there is a jury demand filed, *** is in essence indicating that there can never be a settlement made in good-faith until that determination is made by a judge on what would amount to a bench trial on liability and damages." Thus, Buffalo Grove argues, the circuit court did not abuse its discretion in making a good-faith finding without an evidentiary hearing.

The Joint Tortfeasor Contribution Act (the Act) "creates a statutory right of contribution in actions 'where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death' (740 ILCS 100/1, 2(a) (West 1996)), to the extent that a tortfeasor pays more than his *pro rata* share of the common liability." Johnson, 203 Ill. 2d at 128, 784 N.E.2d at 817; 740 ILCS 100/2(a), (b) (West 2006). The Act states, in relevant parts, as follows:

> "When a release or covenant not to sue or not to enforce
>
> judgment is given in *good[-]faith* to one or more persons liable in tort
>
> arising out of the same injury or the same wrongful death, it does not
>
> discharge any of the other tortfeasors from liability for the injury or
>
> wrongful death unless its terms so provide but it reduces the recovery
>
> on any claim against the others to the extent of any amount stated in
>
> the release or the covenant, or in the amount of the consideration
>
> actually paid for it, whichever is greater." (Emphasis added.) 740
>
> ILCS 100/2(c) (West 2006).

Although the term "good-faith" is not defined by the Act, a settlement "will not be found to

be in good-faith if it is shown that the settling parties engaged in wrongful conduct, collusion, or fraud," or "if it conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." Johnson, 203 Ill. 2d at 134, 784 N.E.2d at 821. The two public policies underlying the Act include "the encouragement of settlements and the equitable apportionment of damages among tortfeasors." Johnson, 203 Ill. 2d at 133, 784 N.E.2d at 821.

Here, the U-Haul entities do not argue that any wrongful conduct, collusion, or fraud occurred to undermine the circuit court's finding of good faith. Nor do they argue that the public policy of the Act to encourage settlement was violated. Instead, the U-Haul entities argue that the settlement agreement entered into between Buffalo Grove and Cellini was inconsistent with the Act's second public policy of promoting the equitable apportionment of damages among tortfeasors because Buffalo Grove was a primary and direct cause of Cellini's injuries and its $1 million settlement with Cellini would shift a disproportionate percentage of the liability onto the U-Haul entities at trial.

In order to prove whether a settlement was negotiated in good faith within the meaning of the Act, the settling parties "carry the initial burden of making a preliminary showing of good faith." Johnson, 203 Ill. 2d at 132, 784 N.E.2d at 820. Once a preliminary showing of good faith is made by the settling parties, the burden of proof shifts to the nonsettling party, who challenges the good faith of the settlement, by proving "the absence of good faith by a preponderance of the evidence." Johnson, 203 Ill. 2d at 132, 784 N.E.2d at 820. "Ultimately, however, whether a settlement satisfies the good faith requirements as contemplated by the [Act] is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances." Johnson, 203 Ill.

2d at 135, 784 N.E.2d at 821; <u>Dubina</u>, 197 Ill. 2d at 191-92, 756 N.E.2d at 840.

Here, in response to the U-Haul entities' opposition to Buffalo Grove's motion for a good-faith finding, Buffalo Grove submitted to the circuit court a copy of the "full and final release and satisfaction agreement," which detailed the terms to which Buffalo Grove and Cellini agreed. Thus, we find that Buffalo Grove sufficiently made a preliminary showing of good faith, and the burden of proof shifted to the U-Haul entities to show an absence of good faith by a preponderance of the evidence. See <u>Johnson</u>, 203 Ill. 2d at 132, 784 N.E.2d at 820 (a settling party must show the existence of a legally valid settlement agreement); see generally <u>Snoddy v. Teepak, Inc.</u>, 198 Ill. App. 3d 966, 969, 556 N.E.2d 682, 684 (1990) (a preliminary showing of good faith was evidenced by the settling parties' "release" and the circuit court properly presumed that the settlement was valid).

Under the facts and the record before us, we find that the U-Haul entities failed to demonstrate, by a preponderance of the evidence, any showing of bad faith by the settling parties. In a response brief opposing Buffalo Grove's motion for a good-faith finding, the U-Haul entities argued that the "[p]laintiffs will almost certainly seek between $10-$20 million in damages" at trial, and thus, Buffalo Grove's settlement with Cellini, the Forshalls and Diamond would be "fundamentally unfair" to the U-Haul entities because they would be "paying in excess of their *pro rata* share of fault, if any." At the July 23, 2009 hearing on the motion for a good-faith finding, the U-Haul entities argued that in light of our supreme court's decision in <u>Ready v. United/Goedecke Services, Inc.</u>, which held that a settling tortfeasor was not a "defendant" considered in apportioning fault and would not be listed on the verdict form, a nonsettling defendant such as the U-Haul entities would be "left holding the bag." See <u>Ready v. United/Goedecke Services, Inc.</u>, 232 Ill. 2d 369, 905

1-09-2163

N.E.2d 725 (2008). The bulk of the U-Haul entities' argument before the circuit court centered around the perceived unfairness that the U-Haul entities would face if Buffalo Grove's settlement agreement were approved, by noting that the U-Haul entities could be found liable at trial for a disproportionate amount of damages. The U-Haul entities pointed to no evidence of bad faith. Their argument was fundamentally based upon the assertion that Buffalo Grove's $1 million settlement was disproportionately low in comparison to the anticipated $10 to $20 million in damages which would be sought from the jury against the U-Haul entities and Lewis, in favor of Cellini.

The record shows that in granting the motion for a good-faith finding, the circuit court had before it multiple pleadings; a "full and final release and satisfaction agreement" between Buffalo Grove and Cellini; and an affidavit by a law enforcement consultant, Ronald Janota, opining that Buffalo Grove violated "accepted standards and practices within the field of law enforcement" by failing to disengage from its pursuit of Lewis. The circuit court also heard oral arguments regarding the issue, and was fully aware of the various tort immunity defenses made by Buffalo Grove in its answer to Cellini's third amended complaint. Further, the consolidated cases had been pending before the circuit court for three years by the time of the hearing and ruling on the motion for a good-faith finding. We are convinced that the circuit court was well-versed in the facts, arguments, pleadings and motions of each party. Thus, under the totality of the circumstances, we cannot say that the circuit court abused its discretion in finding that "there's simply no basis in the record for anything other than a good faith finding," and further in determining that Buffalo Grove's settlement agreement with Cellini for $1 million was reasonable and fair.

The U-Haul entities cite to a number of cases in support of their argument that Buffalo

17

Grove's and Cellini's settlement was not entered into in good faith. However, we find those cases to be factually distinguishable from the facts of the case at bar. See Dubina v. Mesirow Realty Development, Inc., 197 Ill. 2d 185, 756 N.E.2d 836 (2001) (settlement agreement not made in good faith because $4.5 million was allocated as payment for assignments, thus depriving nonsettling defendants of their statutory right to a setoff); Cianci v. Safeco Insurance Co. of Illinois, 356 Ill. App. 3d 767, 826 N.E.2d 548 (2005) (circuit court's good-faith order was premature where the court approved the settlement even though the settling parties did not obey the court's order directing them to allocate the settlement amounts among plaintiffs' theories of recovery, and the circuit court failed to hold an evidentiary hearing where the record contained no information upon which the circuit court could have based its conclusion); Associated Aviation Underwriters, Inc. v. Aon Corp., 344 Ill. App. 3d 163, 800 N.E.2d 424 (2003) (settlement agreement not made in good faith where it released defendant tortfeasor found to be 90 % liable in an underlying wrongful death lawsuit); Stickler v. American Augers, Inc., 303 Ill. App. 3d 689, 708 N.E.2d 403 (1999) (settlement not made in good faith where it released employer-defendant from over a million dollars in liability for a nominal consideration, even though employer-defendant's financial liability and fault had been determined by the Workers' Compensation Act and OSHA); Warsing v. Material Handling Services, Inc., 271 Ill. App. 3d 556, 648 N.E.2d 1126 (1995) (settlement in the amount of $1,000 was not made in good faith where there was a close personal relationship between the settling defendant and the decedent, and the settling defendant had a $300,000 insurance policy). These cited cases are clearly inapposite to the case before us.

Moreover, we reject the U-Haul entities' contention that the circuit court erred in not holding

an evidentiary hearing to determine the culpability of Buffalo Grove's conduct and the extent of Cellini's brain injuries. The circuit court is in "the best position to decide what type of hearing is necessary to fully adjudicate the issue of good faith," and as discussed, the circuit court in this case had ample facts before it and time to determine each party's relative culpability regarding whether the settlement agreement was entered into in good faith. See Johnson, 203 Ill. 2d at 136, 784 N.E.2d at 822 (although the circuit court did not conduct an evidentiary hearing, "[t]here is no reason to believe that the [circuit] court was unable to determine, from the facts before it, the parties' relative culpability"). We agree with Buffalo Grove's contention that, to require the circuit court to hold an evidentiary hearing regarding the relative liabilities and fault of the parties before every ruling on a motion for a good-faith finding would, in essence, amount to a "bench trial" on the merits of the case before the case is actually tried. This would defeat the purpose of a settlement agreement in which the settling defendants do not admit fault.

The U-Haul entities further argue that the circuit court failed to weigh factors such as the probability of recovery, the defenses raised and Buffalo Grove's potential legal liability in approving Buffalo Grove's settlement agreement with Cellini. Instead, they contend, the circuit court "generically stat[ed] that 'really there's simply no basis in the record for anything other than a good faith finding at this point' and issu[ed] an oral ruling from the bench." The U-Haul entities request that a limited evidentiary hearing should be granted for the circuit court to weigh those factors.

"The amount of a settlement must be viewed in relation to the probability of recovery, the defenses raised, and the settling party's potential legal liability." Johnson, 203 Ill. 2d at 137, 784 N.E.2d at 823. Further, "the disparity between the settlement amount and the *ad damnum* in the

19

complaint is not an accurate measure of the good faith of a settlement." Johnson, 203 Ill. 2d at 136-37, 784 N.E.2d at 823; see Smith v. Texaco, Inc., 232 Ill. App. 3d 463, 469, 597 N.E.2d 750, 755 (1992) ("[i]t has been recognized that settlements may be substantially different from the results of litigation because damages are often speculative and the probability of liability uncertain"). "Nor does the small amount of the settlement, alone, require a finding of bad faith." Johnson, 203 Ill. 2d at 137, 784 N.E.2d at 823. As discussed, the circuit court was familiar with the history of the case and had before it the facts, arguments, pleadings, and motions of each party when it considered and granted Buffalo Grove's motion for a good-faith finding. Further, the circuit court was aware of the tort immunity defenses raised by Buffalo Grove in response to Cellini's third amended complaint and heard oral arguments on the issue of good faith. At the July 23, 2009 hearing on the motion for a good faith finding, the circuit court made its finding on the "basis in the record," and thus, we must presume that the circuit court relied on the information available to it in concluding that the settlement was made in good faith. We find no evidence in the record to suggest that the circuit court's approval of the $1 million settlement, in a multidefendant lawsuit in which Cellini alleged an amount "in excess of $50,000" against Buffalo Grove, was "arbitrary, fanciful, or unreasonable," or that "no reasonable person would take the same view." Favia, 381 Ill. App. 3d at 815, 886 N.E.2d at 1187. The U-Haul entities' dissatisfaction with the amount of the settlement between Buffalo Grove and Cellini, along with the speculation that the jury will likely be requested to award $10 to $20 million in damages against the U-Haul entities, is simply insufficient to establish bad faith. We remind the parties that the standard which the objectors needed to meet in opposing the good-faith finding is a preponderance of the evidence. Nothing in the record before the circuit court and now

20

before this court meets that standard. See Johnson, 203 Ill. 2d at 136, 784 N.E.2d at 822 ("[t]he fact that the [circuit] court did not conduct an evidentiary hearing *** does not mean that [it] did not consider whether the settlement amount bore a reasonable relationship to the settling party's relative culpability"). Thus, in light of all the information before the circuit court, we hold that the circuit court did not abuse its discretion in making a good-faith finding.

Finally, we reject the U-Haul entities' contention that our supreme court's decision in Ready changed the landscape regarding how courts determine whether a settlement agreement was made in good faith. The U-Haul entities argue that courts must now engage in a heightened level of scrutiny of the settlement agreement before making a good-faith finding because "Ready provides an incentive for plaintiffs, like Cellini, to settle with more culpable defendants, like Buffalo Grove," while leaving "deep pocket" defendants, such as the U-Haul entities, "exposed to paying a majority of a potential judgment." They argue that this would result in unfairness to the U-Haul entities because Buffalo Grove was the "primary wrongdoer."

In Ready, the decedent's wife sued decedent's employer, a general contractor and a subcontractor as a result of a fatal construction site accident that occurred during the lifting of wooden trusses from the ground floor to the eighth floor of a power plant. Ready, 232 Ill. 2d at 371-72, 905 N.E.2d at 727. The decedent's wife reached settlement agreements totaling $1.113 million with the general contractor and the employer. Ready, 232 Ill. 2d at 372, 905 N.E.2d at 727. The subcontractor did not object. Ready, 232 Ill. 2d at 372, 905 N.E.2d at 727. Subsequently, the circuit court found that the settlement agreements were made in good faith. Ready, 232 Ill. 2d at 372, 905 N.E.2d at 727-28. As a result of the parties' motions *in limine*, the circuit court ruled that the

21

subcontractor, as the nonsettling defendant, was not allowed to present any evidence at trial regarding the conduct of the settling defendants. Ready, 232 Ill. 2d at 373, 905 N.E.2d at 728. The circuit court denied the subcontractor's motion to list the settled defendants on the verdict form "so that if the jury found [the subcontractor] at fault, it could consider whether to allocate some portion of the fault not only to [the decedent], but also to [the] employer and the general contractor." Ready, 232 Ill. 2d at 373, 905 N.E.2d at 728. The trial then proceeded with the subcontractor as the sole defendant, and the jury found the subcontractor liable for $14.23 million in damages. Ready, 232 Ill. 2d at 373, 905 N.E.2d at 728. After "offsets for [the decedent's] comparative negligence (35%) and the settlement amounts paid by [the general contractor] and [the employer]," the subcontractor was held liable in the amount of $8.137 million. Ready, 232 Ill. 2d at 373, 905 N.E.2d at 728. In rejecting the subcontractor's argument that "the exclusion of settling defendants from the apportionment of fault results in unfairness," our supreme court noted that the task of balancing the competing public policies of the Act was "better left to the legislature," and held that a settling defendant should not be named on the jury verdict form for the appropriation of fault. Ready, 232 Ill. 2d at 383, 905 N.E.2d at 733-34; see 735 ILCS 5/2-1117 (West 2006).

We find the U-Haul entities' argument regarding the interpretation of Ready to be unpersuasive. Nowhere in Ready does our supreme court state that, in light of its holding, courts must engage in a heightened level of scrutiny of settlement agreements in making a good-faith determination. We also decline to address the argument raised by the U-Haul entities regarding whether the decision in Ready "actually *discourages* the fair settlement of lawsuits." (Emphasis in original.) That argument raises an issue which is not before us in the instant appeal. The issue on

appeal before this court is whether the circuit court abused its discretion in finding good faith in the settlement agreement entered into between Buffalo Grove and Cellini. We hold that the U-Haul entities failed to prove bad faith by a preponderance of the evidence. Therefore, the circuit court acted within its discretion in granting the motion for a good-faith finding, and dismissing with prejudice all counterclaims for contribution and complaints against Buffalo Grove.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HOFFMAN and KARNEZIS, JJ., concur.