# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Miranda v. The Walsh Group, Ltd.*, 2013 IL App (1st) 122674

---

| | |
|---|---|
| Appellate Court Caption | FRANCISCO MIRANDA, as Father and Next Friend of Marco Antonio Miranda, a Minor, Plaintiff, v. THE WALSH GROUP, LTD., and WALSH CONSTRUCTION COMPANY, d/b/a Walsh Construction of Illinois, Defendants and Third-Party Plaintiffs-Appellants (Kesha A. Geans, Third-Party Defendant-Appellee). |
| District & No. | First District, First Division<br>Docket No. 1-12-2674 |
| Filed | September 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a vehicular collision that occurred when an intoxicated driver struck a concrete barrier placed along the street by a construction company, crossed the center line, struck plaintiff's oncoming vehicle, and seriously injured his minor son, the trial court's finding that the settlement between plaintiff and the drunk driver for the $20,000 policy limit of her policy was not made in bad faith was upheld, notwithstanding the company's contentions that the court failed to consider the settlement amount in relation to the drunk driver's potential liability and the probability of recovery, and that releasing the drunk driver would force the company to absorb an unfair portion of plaintiff's damages, since the fact that a settlement favors one party over another is not necessarily an indication of bad faith, and under the circumstances, including the drunk driver's lack of assets and the lack of any evidence of wrongful conduct, collusion or fraud, no abuse of discretion occurred. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-007572; the Hon. William E. Gomolinski, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Christensen & Ehret, LLP, of Chicago (Mark E. Christensen, Katherine A. Jones, Nathan A. Hall, and Christopher C. Cassidy, of counsel), for appellants. |
| | Swope Law Offices, LLC, of Schererville, Indiana (Shawn Swope, Justin Treasure, and Annica Downing, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion. Justice Cunningham concurred in the judgment and opinion. Justice Delort dissented, with opinion. |

## OPINION

¶ 1    The defendants and third-party plaintiffs, The Walsh Group, Ltd., Walsh Construction Company, d/b/a Walsh Construction of Illinois (Walsh), appealed the circuit court order which found that the settlement between the plaintiff, Francisco Miranda, as father and next friend of Marco Antonio Miranda, and the third-party defendant, Kesha A. Geans, for injuries that Marco Miranda sustained following a vehicular accident with Geans was made in good faith. The settlement awarded the plaintiff $20,000, which was the policy limit of Geans' auto insurance policy issued by Universal Casualty Company (Universal). Walsh contends that the circuit court abused its discretion in approving the settlement because it failed to consider the amount of the settlement in relation to the probability of recovery and Geans' potential legal liability. For the reasons that follow, we affirm.

¶ 2    On September 24, 2006, Geans, who was driving while intoxicated, lost control of her vehicle near the intersection of Ogden Avenue and Taylor Street. She struck a concrete jersey barrier located to the right of her vehicle, causing her vehicle to overturn and slide across the center line of Ogden Avenue. Geans' vehicle collided with the Miranda family's car, injuring several members of the family. Marco Antonio Miranda, who was 12 years old at the time of the collision, suffered serious brain injuries which have left him permanently disabled. Geans, whose blood alcohol level was 0.229, nearly three times the legal limit of 0.08, eventually pled guilty to one felony count of fourth degree aggravated driving under the influence.

¶ 3    On December 12, 2008, Universal paid the limit of Geans' $20,000 policy to the plaintiff in exchange for a full release of all claims against Geans and Universal. The release states

in relevant part:

> "As further consideration for the payment of said sum Claimant agrees to indemnify, protect and save harmless the parties [Geans and Universal] hereby released from all judgments, costs and expenses whatsoever arising on account of any action, claim or demand by [Marco Antonio Miranda], or by any person acting for or on behalf of said minor in respect of the aforesaid injuries or damages."

¶ 4        Subsequently, on November 29, 2010, the plaintiff filed an amended complaint against Walsh, which placed the concrete jersey barrier that Geans struck along Ogden Avenue as part of its construction project to expand a nearby medical center. The complaint stated two nearly identical counts of negligence against Walsh, alleging that it created a dangerous condition by placing the barrier alongside its work site in the direct pathway of oncoming traffic. On February 22, 2011, Walsh filed a third-party complaint for contribution against Geans pursuant to the Illinois Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/1 *et seq.* (West 2010)), alleging that Geans' reckless driving was the sole proximate cause of the plaintiff's injuries.

¶ 5        On May 3, 2011, Geans filed a motion for involuntary dismissal pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2010)), claiming that her presuit settlement with the plaintiff effectively ended her liability as a contributing tortfeasor. On September 16, 2011, Geans filed a motion for a finding that the settlement was made in good faith, as required under the Act. 740 ILCS 100/2 (West 2010). The court allowed limited discovery, granting Walsh permission to depose Geans but denying its other discovery requests. At her deposition, Geans testified that she had no recollection of the events leading up to the collision or of the collision itself. She recalled drinking at a social club on Roosevelt Road at some point on the evening of September 23, 2006. Her next memory was waking up in the hospital handcuffed to her bed. She did not recall what she drank, when she left the club, the route she drove home, the collision, whether she struck the jersey barricade before crossing the center line, or the collision with the plaintiff's vehicle. Geans also testified that she: resided in Chicago Housing Authority property with her 11-year-old child; attended community college classes with the intent of becoming a teacher; had been unemployed since November 2010; last earned $15 per hour in an administrative job; received $455 biweekly from unemployment insurance; and had no assets, such as property, bank accounts, pensions, or savings accounts. Geans further testified that she had had a medical condition, hidradenitis suppurativa, since she was a child, which required frequent surgeries and prevented her from working or attending college for periods of time.

¶ 6        On July 24, 2012, after hearing the parties' arguments, the circuit court stated that, under the Act, it was required to consider the conduct of the party requesting the good-faith finding and the public policies that inform the Act. The court determined that there was no evidence of wrongful conduct, collusion, or fraud on the part of Geans or Universal in the presuit settlement. The court also identified the two public policies behind the Act: the encouragement of settlement and the equitable apportionment of damages among tortfeasors. The court noted that the fact that a settlement is advantageous to a party is not necessarily an indication of bad faith. The court further stated that the disparity between the settlement amount and the damages sought in the complaint is not an accurate measure of good faith.

The court concluded that, because there was no evidence of wrongful conduct, collusion, or fraud and because the full policy limit had been tendered, the settlement was made in good faith. Accordingly, the circuit court granted Geans' motion for involuntary dismissal.

¶ 7    On August 23, 2012, the court granted Walsh's request to add language pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) to the order granting Geans' motions for a good-faith finding and involuntary dismissal. Walsh then timely appealed from that order.

¶ 8    Walsh contends that the circuit court abused its discretion by approving the settlement because it failed to consider the amount of the settlement in relation to the probability of recovery and Geans' potential legal liability. Walsh argues that the court's failure to do so contravenes the purpose of the Act to encourage equitable contribution of damages, because it may now be forced to absorb an unfair portion of the plaintiff's damages, far in excess of the $20,000 that Geans paid. Further, Walsh argues that it will suffer unjust prejudice if Geans' settlement is accepted because, after the settlement, Geans cannot be named on the jury verdict form for purposes of apportioning fault. See 735 ILCS 5/2-1117 (West 2012); *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369 (2008). Finally, Walsh asserts that the circuit court's decision has the effect of rewarding Geans' drunk driving. We disagree that any of these points justify overturning the circuit court's ruling.

¶ 9    "The 'good faith' of a settlement is the only limitation which the Act places on the right to settle and it is the good-faith nature of a settlement that extinguishes the contribution liability of the settling tortfeasor." *Johnson v. United Airlines*, 203 Ill. 2d 121, 128 (2003). The Act does not define "good faith," nor does it provide any procedural guidelines as to when or how a good-faith determination is to be made. *Id.* When deciding whether a settlement was made in good faith, the settling parties carry the initial burden of making a preliminary showing of good faith. *Id.* at 132. At a minimum, the settling parties must show the existence of a legally valid settlement agreement, although not all legally valid settlements satisfy the good-faith requirements of the Act and the court may need to consider other factual evidence before making its determination. *Id.* Once the settling parties make a preliminary showing of good faith, the party challenging the good faith of the settlement must prove the absence of good faith by a preponderance of the evidence. *Id.* When a court decides whether a settlement was negotiated in good faith, it must strike a balance between the two important public policies underlying the Act–the encouragement of settlements and the equitable apportionment of damages among tortfeasors. *Id.* at 133.

¶ 10   While there is no single, precise formula for determining what constitutes good faith within the meaning of the Act, courts have found that a settlement will not be found to be in good faith if it is shown that the settling parties engaged in wrongful conduct, collusion, or fraud, or if the settlement conflicts with the terms of the Act or is inconsistent with the policies underlying the Act. *Id.* at 134. Whether a settlement satisfies the good-faith requirement of the Act is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances. *Id.* at 135. "Emphasis should not be placed on any single factor." *Id.* at 139. The fact that a settlement is advantageous to a party is not necessarily an indication of bad faith. *Id.* at 138. The disparity between the settlement amount and the damages sought in the plaintiff's complaint is not an accurate

measure of the good faith of a settlement, and the small amount of the settlement alone does not require a finding of bad faith. *Id.* at 136-37. Rather, the amount of a settlement must be viewed in relation to the probability of recovery, the defenses raised, and the settling party's potential legal liability. *Id.* at 137. We will not disturb the trial court's finding of good faith absent an abuse of its discretion. *Id.* at 135. A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view. *TruServ Corp. v. Ernst & Young, LLP*, 376 Ill. App. 3d 218, 227 (2007).

¶ 11        In *Lard v. AM/FM Ohio, Inc.*, 387 Ill. App. 3d 915, 931 (2009), the appellate court affirmed the trial court's good-faith determination under facts that are similar to the facts of the case at bar. In *Lard*, a stairwell pileup at a nightclub resulted in 22 wrongful death claims and more than 70 personal injury claims. *Lard*, 387 Ill. App. 3d at 916. The plaintiffs agreed to settle their claims with several defendants for $2.5 million, furnished by the only available insurance policies. *Id.* at 919. Additionally, the settlement released an individually named defendant, Lesly Benodin. *Id.* The nonsettling defendant objected to the settlement, arguing that Benodin was too wealthy to be extricated from the lawsuits merely for insurance policy limits and that it would face future setoff problems. *Id.* at 920, 922. However, the court found the settlement to have been made in good faith, reasoning that Benodin's personal wealth was irrelevant because it was unlikely that he would be subject to personal liability and because the settling defendants had no available assets despite their culpability. *Id.* at 931-32. Considering the insurance proceeds were the only funds available and there was no evidence of wrongful conduct, collusion, or fraud, the appellate court affirmed the trial court's decision to grant the good-faith finding. *Id.* at 932. The appellate court explained that the $2.5 million settlement was the "best amount available under extraordinarily poor circumstances." *Id.* at 931; see also *Pecoraro v. Balkonis*, 383 Ill. App. 3d 1028, 1039 (2008) (affirming good-faith finding of settlement where amount of settlement was low but the settling party had little or no assets that the plaintiff could ever recover); *Yoder v. Ferguson*, 381 Ill. App. 3d 353, 394 (2008) (affirming good-faith finding of settlement where the trial court properly considered the potential damages and faults of the parties but also noted that the settling defendants offered the maximum amount that their insurance policies would allow).

¶ 12        Likewise, in this case, the trial court noted that there was no evidence of wrongful conduct, collusion, or fraud by the settling parties existed. Like the court in *Lard* knew that the defendants had no other assets available aside from the minimal insurance limits, the trial court in this case also knew that Geans had no other assets aside from her policy limit of $20,000. Additionally, Geans was unemployed and had a chronic, sometimes disabling, medical condition. While it was likely that damages would far surpass Geans' insurance policy limit and she had no potential defenses, the court understood that, like the plaintiffs in *Lard*, the plaintiff here would likely be unable to recover any amount above the insurance policy limit. Thus, like in *Lard*, Geans' $20,000 settlement was the best amount available under poor circumstances.

¶ 13        Contrary to Walsh's argument that the trial court did not address the issue of Geans' culpability, the trial court had questioned whether a "legally impaired [person] should be able to enter into a settlement," but determined that the "totality of the circumstances" supported

that the settlement was nonetheless made in good faith. The record demonstrates that the trial court considered the relative fault of the parties, along with the other relevant factors when it considered the good faith of the settlement. Therefore, we cannot hold that the trial court abused its discretion when it determined that, under the totality of the circumstances, the settlement was made in good faith.

¶ 14    We further reject Walsh's remaining argument that the settlement unfairly subjects it to joint liability under section 2-1117 of the Code (735 ILCS 5/2-1117 (West 2012)). Section 2-1117 of the Code provides that, for medical expenses, "any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant except the plaintiff's employer, shall be severally liable for other damages," and any defendant whose fault is determined to be greater than 25% shall be jointly and severally liable for all other damages. 735 ILCS 5/2-1117 (West 2012). In *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 383 (2008), our supreme court held that a settling defendant was not a "defendant sued by the plaintiff" under section 2-1117 of the Code and should not be named on the jury verdict form for the appropriation of fault. Based on this holding, Walsh argues that, by excluding Geans from the jury's apportionment of fault, the settlement unfairly subjects it to greater liability, and perhaps even joint liability.

¶ 15    However, we explained in *Cellini v. Village of Gurnee*, 403 Ill. App. 3d 26, 40-41, 932 N.E.2d 1139 (2010), that *Ready* does nothing to change the factors which the trial court must consider or change the level of scrutiny which it must apply in making a good-faith determination of a settlement agreement. In *Cellini*, we also declined to address whether *Ready* discourages fair settlements or unfairly affects nonsettling defendants by removing the settling defendant from the jury verdict forms to apportion liability because that was not an issue in determining whether the settlement was made in good faith. *Id.* at 41-42. Rather, the only issue before the court in *Cellini* was whether the trial court abused its discretion in finding good faith in the settlement agreement, which concerns only the public policies that inform the Act–the encouragement of settlements and the equitable apportionment of damages among tortfeasors. See *id.* Accordingly, we similarly decline to address whether the decision in *Ready* adversely affects Walsh's rights under section 2-1117 of the Code. Likewise, whether the circuit court's approval of the settlement had the effect of rewarding Geans' drunk driving is also not at issue because the public policies behind drunk driving statutes do not inform the Act.

¶ 16    Finally, we remain mindful of our standard of review. When, as in this case, the standard of review is abuse of discretion, we do not substitute our judgment for that of the circuit court. *Jones v. Searle Laboratories*, 93 Ill. 2d 366, 378 (1982). The question is not whether we would have resolved the good-faith issue as the trial judge did (*Jones*, 93 Ill. 2d at 378), or whether he exercised his discretion wisely (*Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495 (1986)); rather, our task is limited to determining whether the trial judge abused his discretion. The circuit court abuses its discretion when its resolution of a discretionary issue is clearly against logic, arbitrary, exceeds the bounds of reason or runs contrary to recognized principles of law. *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083 (2000). Viewing the totality of the circumstances in this case, we are unable to conclude that

the trial judge's resolution of the good-faith issue is contrary to logic, arbitrary, or that it exceeds the bounds of reason or runs contrary to recognized principles of law. Consequently, we are unable to conclude that the trial judge abused his discretion in finding that the plaintiff's settlement with Geans was made in good faith.

¶ 17     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 18     Affirmed.

¶ 19     JUSTICE DELORT, dissenting.

¶ 20     The lenient standards which appellate judges must apply when they review trial court decisions often compel a different result than if they were deciding the case in the first instance. A central principle of our appellate jurisprudence, in fact, teaches that we should neither retry cases nor reweigh evidence. Along that line, the majority correctly recognizes that we cannot overturn the judge's good-faith finding here unless he abused his discretion. See *supra* ¶ 16. While abuse of discretion is a strict standard, it is one that can occasionally be overcome. Because I believe it has clearly been overcome here, I must respectfully disagree with my colleagues.

¶ 21     The majority correctly explains the facts and history of the case. Additionally, the majority and I agree that when considering whether to grant a good-faith finding, the court must "strike a balance between the two important public policies underlying the [Illinois Joint Tortfeasor Contribution] Act–the encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Supra* ¶ 9. As the majority notes, Geans has pled guilty to a felony resulting from her driving a motor vehicle with a blood alcohol level of 0.229, almost three times the legal limit. *Supra* ¶ 2. Based on the record developed so far, it is clear that Walsh's potential share of culpability is but an infinitesimal fraction of Geans' share. Walsh is a defendant merely because it placed roadway barriers, approved by the City of Chicago, that might have theoretically exacerbated certain causal factors contributing to the accident. It could well be that Walsh will eventually avoid trial by demonstrating a lack of material facts regarding the propriety of the placement of barriers. However, if not, money–like water–always finds an outlet. If Walsh goes to trial by itself, the tragic facts could very well persuade the jury to award a large verdict. Geans' drop-in-the-bucket settlement takes her off the stage at the jury trial. The portion of the verdict attributable to nonmedical expenses against Walsh might be reduced by application of the limiting principle of several, rather than joint, liability. See 735 ILCS 5/2-1117 (West 2012); *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 69 (2002) (holding that several liability only reduces nonmedical expenses). However, as to the rest of the verdict, the good-faith finding bars Walsh from seeking contribution from Geans. That being the case, the jury is highly unlikely to precisely and properly apportion Walsh's degree of fault *vis-à-vis* that of the absent Geans.

¶ 22     At oral argument, the parties could not provide even a rough estimate of the special damages incurred by the victim in this case. Based on their description of his injuries and the length of time he received medical care and rehabilitation, however, one can surmise that the damages incurred would be in the hundreds of thousands of dollars, if not more. For the sake

of discussion only, I will assume that a jury would award $1 million in this case. Geans walked away with a full release of liability after her insurance company paid the policy limit of $20,000.

¶ 23    Many plaintiffs are doubly unfortunate in that they are not only injured, but are injured by someone who has no resources to pay damages. Because Geans is impoverished, she might have avoided paying anything more by filing for bankruptcy, and the $20,000 may well have been "the best amount available under poor circumstances." See *supra* ¶ 12. However, the amount of money that the victim would actually receive in hand from Geans is not, as she suggests, the predominant factor in the formula. The relative degree of fault is just as important, if not more so. In discussing these factors, our supreme court has stated:

> "This court has previously recognized that the Contribution Act seeks to promote two important public policies–the encouragement of settlements and the equitable apportionment of damages among tortfeasors. See *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d at 193-94; *In re Guardianship of Babb*, 162 Ill. 2d at 171. When a court decides whether a settlement was negotiated in 'good faith,' it must strike a balance between these two policy considerations." *Johnson*, 203 Ill. 2d at 133.

¶ 24    In particular, one of the applicable factors is "whether the amount paid is within a reasonable range of the settlor's fair share of liability." *Yoder v. Ferguson*, 381 Ill. App. 3d 353, 391 (2008). Geans' $20,000 settlement is so microscopic in comparison to her just share of the million-dollar liability that it cannot possibly meet the good-faith test. Accordingly, I would find that the trial court abused its discretion and reverse the judgment below.